**SO ORDERED.**

**SIGNED this 06 day of March, 2007.**



_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

JANI LEIGH BRYSON,

                 DEBTOR.

CASE NO. 05-27009
CHAPTER 7

**MEMORANDUM AND ORDER ADDRESSING WHETHER IN REM CLAIM AGAINST DEBTOR'S RESIDENCE IS INCLUDED IN DEBTOR'S AGGREGATE "CONSUMER DEBT" FOR PURPOSES OF 11 U.S.C. § 707(b) MOTION TO DISMISS**

    The narrow issue under advisement, as stated by the United States Trustee, is whether, even though Debtor has no personal liability on a note secured by her residence, "the lien against the Debtor's residence is included in calculating the Debtor's aggregate 'consumer debt'" for purposes of the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b).[1] The

---

[1] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

Plaintiff United States Trustee, Felicia S. Turner ("UST") appears by Joyce Owen, Assistant United States Trustee. Defendant Debtor, Jani Bryson ("Debtor") appears by Carol M. Katzer, of Krigel & Krigel, PC. There are no other appearances. The Court has jurisdiction.[2]

**FINDINGS OF FACT.**

The parties have stipulated to the facts and supporting documents concerning the debt on the residence. On the date of filing, Debtor was a joint owner of the residence and a party to a mortgage of the residence that secured her husband's note to the Bank of Blue Valley. Debtor was not an obligor on the note.

The history of the financing of the property is as follows. On August 20, 1988, by warranty deed, Daniel R. Bryson, who was then Debtor's spouse, acquired property known as 4605 West 139th Street, Leawood, Kansas ("Residence").[3] Debtor was not on the deed. The purchase was financed by Prism. Concurrently with the conveyance, Debtor and her husband executed a mortgage in favor of Prism, securing the Prism note in the amount of 326,200, but there is no evidence that Debtor was obligated on the secured note.

The Prism note was refinanced by McGuire on January 8, 2001. McGuire required the addition of Debtor to the title. A Kansas Warranty Deed was executed by Daniel R. Bryson, Jr. and Jani L. Bryson, husband and wife, to Daniel R. Bryson, Jr. and Jani L. Bryson, husband and wife, grantees, as joint tenants with right of survivorship. At the same time both Daniel and Jani

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion to dismiss is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[3] Debtor and her husband resided in the Residence on the date of filing, October 15, 2005.

Bryson executed a promissory note in the amount of $96,000 and mortgage for the same amount in favor of First Horizon Loan Corporation, d/b/a McGuire Mortgage (McGuire).

On July 26, 2002, in connection with another refinancing of the Residence, Debtor and her husband executed a mortgage of the Residence in favor of Magnus. The mortgage registration tax was paid on $380,000.

On May 23, 2003, in connection with another refinancing, Daniel R. Bryson, Jr. executed a promissory note in the amount of $360,600 in favor of Bank of Blue Valley ("Blue Valley") as the sole maker and obligor. Debtor did not execute the note and is not an obligor under the note. At the same time, a mortgage of the Residence was executed by Daniel R. Bryson, Jr. and Debtor, husband and wife, in favor of Blue Valley. Mortgage registration tax was paid on $360,600.

There have been no further deeds or mortgages of the Residence since May 23, 2003. The Residence is valued on Schedule A at $425,000, and Schedule A shows a lien against the Residence of $330,000. Although the Stipulation of Facts does not directly address the issue, the Court concludes from the schedules and from the arguments of the parties that all of the notes other than the 2003 Blue Valley note have been satisfied and that Blue Valley is the holder of the only mortgage lien.

Debtor's Schedule A described the Residence, disclosed her joint ownership, stated the current market value was $425,000, but listed the amount of secured claim as zero. Schedule A includes the following note in the "Description and Location of Property" column:

> Debtor is on the title to the residence with her husband as joint tenants. However, debtor is not an obligor on the promissory note secured by the mortgage encumbering the property, and the

creditor is not listed in Debtor's schedules. The lien has a balance
of approximately $330,000.

The Residence is claimed as Debtor's exempt homestead. Debtor's schedules list no creditors having secured claims or priority claims. Schedule F, creditors holding unsecured nonpriority claims, lists claims in the amount of $38,588.61, all of which are listed as business debt. Debtor's income, Schedule I, is listed as $4,580.00 and her expenses, Schedule J, as $4,328.00.

 **DISCUSSION.**

The issue presented arises because the Court may grant a motion of the UST to dismiss pursuant to § 707(b) based upon substantial abuse only if the Debtor's debts are primarily consumer debts. Subsection § 707(b) provides in relevant part:

> (b). After notice and hearing, the court, on its own motion or on a
> motion by the United States trustee, . . . may dismiss a case filed
> by an individual debtor under this chapter whose debts are
> primarily consumer debts if it finds that the granting of relief
> would be a substantial abuse of the provisions of this chapter.
> There shall be a presumption in favor of granting the relief
> requested by the debtor.

It is the UST's position that the threshold requirement, that Debtor's debts be "primarily consumer debts," is satisfied because the note in the amount of $330,000 secured by the mortgage on the Residence must be included and considered a consumer debt, making it unnecessary to determine whether the unsecured debt listed by Debtor as business debt, as stated in her Schedules, are in fact consumer debt. The UST notes that at the time of filing, Debtor was a joint owner of the Residence and a party to the mortgage. Debtor responds that the note secured by the mortgage on the Residence should not be considered because she has no personal

4

liability on the note and the Residence is property of her husband.[4]  The Court has under advisement the narrow question of whether the debt secured by the Residence should be considered when determining the extent of Debtor's consumer debts for purposes of § 707(b).

The Court agrees with the UST's basic proposition that an in rem debt against Debtor's property must be considered when determining the extent of consumer debt.  The Code defines "debt" as "liability on a claim."[5]  A "claim" as defined by the Code includes a "right to payment" and a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."[6]  The statutory rules of construction provide that "'claim against the debtor' includes claim against property of the debtor."[7]

The United States Supreme Court in *Johnson v. Home State Bank*[8] construed the forgoing definitions when deciding that a mortgage lien which secured an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a claim subject to inclusion in an approved Chapter 13 reorganization plan.  In *Johnson*, debtor defaulted on his farm mortgage note, and foreclosure was initiated.  The debtor filed for relief under Chapter 7 and was discharged from his personal liability on the note secured by the mortgage.  After the automatic

---

[4] The parties appear to agree that the claim of Blue Valley, if it constitutes a debt of Debtor, is consumer debt.

[5] 11 U.S.C. § 101(12).

[6] 11 U.S.C. § 101(5).

[7] 11 U.S.C. § 102(2).

[8] *Johnson v. Home State Bank*, 501 U.S. 78 (1991).

5

stay was lifted, the bank reinstated the foreclosure proceedings, and Johnson then filed a Chapter 13 case. The bankruptcy court confirmed his Chapter 13 plan to pay the bank in installments, the district court reversed, and the Tenth Circuit affirmed. The Supreme Court reversed, finding that the bank's mortgage interest which survived discharge of personal liability was a "claim," within the meaning of § 101(5), that could be paid through the Chapter 13 plan. The court stated:

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor. [9]

"A fair reading of § 102(2) is that a creditor who . . . has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code."[10]

There is nothing in *Johnson* limiting the Code analysis to questions concerning Chapter 13 plans. In addition, as pointed out by the UST, in rem debt has been included when considering the debt limits in Chapter 12[11] and Chapter 13[12] cases. Applying the *Johnson* court's construction of the Code, the Court holds that the claim of Blue Valley pursuant to its mortgage is a "claim" for purposes of § 707(b). Blue Valley holds a mortgage executed by Debtor pledging her interest

---

[9] *Id.*, 501 U.S. at 84.

[10] *Id.*, 501 U.S. at 85.

[11] *Lindsey, Stephenson & Lindsey v. Fed. Dep. Ins. Corp. (In re Lindsey, Stephenson & Lindsey)*, 995 F.2d 626 (5th Cir. 1993).

[12] *In re Monroe*, 282 B.R. 219 (Bankr. D. Ariz. 2002).

6

in the Residence to the payment of the note executed by Debtor's husband. Blue Valley holds a claim under the Code definitions as construed in *Johnson*.

However, this construction of the Code does not end the inquiry. Application of the § 707(b) criteria that the debts of the Debtor be primarily consumer debts requires that the value of the in rem claim be determined. Pledging one's property interest pursuant to a mortgage is not equivalent to agreeing to in rem liability for the full amount of the note secured by the mortgage lien; the in rem liability can be no greater than the mortgagor's interest in the property. Therefore under the Code, for a nonrecourse claim, the court's valuation of the creditor's interest in the estate's interest in the collateral pursuant to § 506(a) establishes not only the creditor's "allowed" *secured claim*, but also the creditor's *entire allowed claim*.[13] Thus, Blue Valley has a claim against the Debtor only to the extent of the value of the estate's interest in the Residence.[14]

The question therefore is what was the value, if any, of the estate's interest in the Residence on the date of filing. Pursuant to the Code, only the Debtor's interest in property becomes property of the estate.[15] In bankruptcy, property interests are determined by state law.[16]

---

[13] *See* 7 *Collier on Bankruptcy* ¶ 1111.03[1][a][ii][A] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2006).

[14] The UST does not directly address this issue, but argues that because the conveyance of the Residence by Debtor's spouse to her as a joint tenant gave her a property interest, and the amount of Blue Valley's note exceeds the other debt listed by Debtor, her debt is primarily consumer debt. Debtor contends because she is the holder of bare legal title to the Residence, she has no property interest against which the claim of Blue Valley can be enforced and therefore the Blue Valley claim should not be considered when determining if her debt is primarily consumer debt.

[15] 11 U.S.C. § 541; *see* 11 U.S.C. § 102(2), which provides that in title 11 "'claim against the debtor' includes claim against *property of the debtor*" (Emphasis added).

[16] *Butner v. United States*, 440 U.S. 48 (1979).

Under Kansas law, a joint tenancy deed creates only a rebuttable presumption of equal ownership between the tenants,[17] and there is no prohibition against joint tenants having very disparate interests.[18] One cotenant may demonstrate ownership in the property different from the interest created by the presumption of equal ownership and thereby limit the interest of a creditor to less than the joint tenant's proportionate share of the account.[19] When the issue of ownership of one tenant's interest arises in bankruptcy, the courts apply the Kansas rebuttable presumption. For example, in *In re Crouch C Stores*,[20] the debtor was held to have no interest other than bare legal title to real property even though she was one of four joint tenants. In a dispute over sale proceeds, the evidence established that the property, which was sold during the pendancy of the bankruptcy, had been the residence of the debtor's mother for over 30 years; that no consideration was given when the mother prepetition deeded the property to herself, the debtor, and two other family members; that the joint tenancy was created as an estate planning tool; and the joint tenancy was not created as a gift. In another case, Chief Judge Nugent, when determining the debtor's interest in jointly owned personal property, found that under Kansas law for both tenancies in common and joint tenancies there is a rebuttable presumption of equal ownership and

---

[17] *E.g., Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 574 P.2d 1382 (1978) (holding that garnishment of a joint tenancy bank account servers the joint tenancy and the parties become tenants in common, with a rebuttable presumption of equal ownership, with burden of proof on the party attacking the presumption); *Hutchinson Nat'l Bank and Trust Co. v. Brown*, 12 Kan. App.2d 673, 753 P. 2d 1299 (1988) rev. denied June 22, 1988 (holding that joint tenant's unilateral pledge of certificate of deposit severed unity of interest giving rise to rebuttable presumption of equal ownership).

[18] *Estate of Lasater*, 30 Kan. App.2d 1021, 54 P.3d 511 (2002) (holding that joint tenancy with right of survivorship was created with one tenant having a 1% interest and the other a 99% interest).

[19] *Nelson v. First Nat'l Bank & Trust Co. (In re Nelson)*, 6 B.R. 248, 250-51 (Bankr. D. Kan.1980).

[20] *In re Crouch C Stores, Inc.*, 120 B.R. 178, 180 (D. Kan. 1990) (Franklin, Chief Judge).

8

that the "party attacking the presumption assumes the burden of proof of the degree and extent of the cotentant's interest."[21]

In support of her position that she holds only bare legal title to the Residence, Debtor proffers evidence that the deed by which she became a joint owner of the Residence was executed and delivered only because it was a requirement of Prism, a lender, and was made without intent to convey any interest in the Residence to her. Debtor also proffers evidence that Debtor's non-debtor husband has contributed all of the consideration for the Residence, including the making of all mortgage payments from a separate account into which is deposited his separate paycheck. The UST responds that intent of the grantor of the deed is irrelevant and consideration of any oral agreement between Debtor and her husband as to ownership of the real property is barred by the statute of frauds.

The Court rejects the UST's positions. The Kansas Court of Appeals and the Kansas Bankruptcy Court have found the presumption of equal ownership of real property held in joint tenancy rebutted by evidence of the parties' intent and the consideration for the transfer.[22] The Court finds the presumption of equal ownership is rebuttable.

This Court finds the foregoing principles of Kansas law controlling and holds that the estate's interest in the Debtor's interest in the Residence is presumed to be one half of its value,

---

[21] *Parks v. Scott (In re Steele)*, Case no. 04-10297; Adv. no. 04-5329 (Bankr. D. Kan. May 11, 2006) (Nugent, Chief Judge).

[22] *Estate of Lasater*, 30 Kan. App.2d at 1021, 54 P.3d at 511; *In re Crouch C Stores, Inc.*, 120 B.R. at 178.

subject to the Debtor's and/or her husband's right to rebut this presumption.[23] The Court at this time cannot make a finding of whether the presumption shall control, as the stipulation of facts of the parties, which is the only evidence before the Court, is not directed to that issue.

**CONCLUSION.**

In conclusion, the Court holds that in rem debts are included when applying the condition of § 707(b) that the UST may move to dismiss a case for substantial abuse only if the Debtor's debts are primarily consumer debts. In this case, where on the date of filing the Debtor had no in personam liability on the Blue Valley note secured by a mortgage on the Residence but owned the Residence in joint tenancy with her husband and had executed a mortgage securing her husband's obligation, the extent of the Debtor's in rem liability did not exceed the value of her interest in the Residence. Debtor's ownership of the Residence as a joint tenant gave rise to a presumption that she had a 50% interest in the Residence, but this presumption is rebuttable, with Debtor having the burden of proof on the issue.

The eligibility of the UST to proceed on the motion to dismiss cannot be determined absent resolution of this factual issue. The Court shall schedule a status conference in the near future.

---

[23] Chief Judge Franklin in *Crouch C. Stores* and Chief Judge Nugent in *Steele* have so held without addressing the question of whether the filing of a bankruptcy petition severs the joint tenancy, and this Court also does not address this issue, finding it unnecessary at this stage of the proceedings where the only question is the amount of the Debtor's consumer debt. Bankruptcy courts disagree as to the time of severance of the joint tenancy and its conversion into a tenancy in common. Compare *In re Lambert*, 34 B.R. 41 (Bankr. D. Colo. 1983) (holding under Colorado law the filing of a petition by one joint tenant severs the joint tenancy) with *Durnal v. Borg-Warner Acceptance Corp. (In re DeMarco)*, 114 B.R. 121 (Bankr. N.D.W. Va. 1990) (holding under West Virginia law, the filing of a Chapter 7 petition did not sever joint tenancy with right of survivorship and thus upon death of debtor, property passed to joint tenant).

**IT IS SO ORDERED.**

###